**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**

CHAUNCEY GIRARD,

                                        Plaintiff,

            - v -                                    Civ. No. 9:15-CV-0187
                                                            (TJM/DJS)

CUTTLE; A. HICKEY; HAROLD GRAHAM;
ALEC VENDITTI; TIMOTHY ABATE; CHARLES
THOMAS; RICHARD GILFUS; ANTHONY
ANNUCCI; CARL KOENIGSMAN; CONNERS; and
JESSICA DUGAN,

                                        Defendants.

**APPEARANCES:**                                **OF COUNSEL:**

CHAUNCEY GIRARD
Plaintiff, *Pro Se*
11-A-1352
Green Haven Correctional Facility
P.O. Box 4000
Stormville, New York 12582

HON. BARBARA UNDERWOOD                JOHN F. MOORE, ESQ.
Attorney General of the State of New York    Assistant Attorney General
Attorney for Defendants
The Capitol
Albany, New York 12224

**DANIEL J. STEWART**
**United States Magistrate Judge**

**REPORT-RECOMMENDATION and ORDER**

        *Pro se* Plaintiff Chauncey Girard brings this civil rights action, pursuant to 42 U.S.C.

§ 1983, alleging that Defendants violated various constitutional rights in December 2014 and

January 2015 while he was incarcerated at Auburn Correctional Facility.  Dkt. No. 83, Am.

Compl.  On January 30, 2018, Defendants filed a Motion for Summary Judgment, pursuant

to Federal Rule of Civil Procedure 56(a).  Dkt. No. 213.  Defendants separately filed

Plaintiff's medical records in support of their Motion.  Dkt. No. 214.  Additionally,

Defendants filed an Amended Memorandum in Support of their Motion for Summary

Judgment.  Dkt. No. 217.  Numerous documents have been considered as Plaintiff's

Opposition to the Motion.  *See* Dkt. Nos. 210, 218-220, 229, 239 & 241.[1]  Defendants filed

a Reply.  Dkt. No. 237.  For the reasons that follow, the Court recommends **granting**

Defendants' Motion for Summary Judgment.

## I. BACKGROUND

Except where otherwise noted, the following material facts are undisputed.[2]  At all

times relevant to this action Plaintiff was an inmate in the custody of the New York

Department of Corrections and Community Supervision ("DOCCS").  *See generally* Am.

Compl.  The events at issue took place in December 2014 and January 2015 at Auburn

Correctional Facility.  *Id.*

---

[1] For ease of reference, Plaintiff's various filings are referred to here simply by Docket Number.

[2] Under Local Rule 7.1(a)(3), on a motion for summary judgment a non-movant must respond to the movant's statement of material facts "by admitting and/or denying each of the movant's assertions in matching numbered paragraphs" and "set forth a specific citation to the record where the factual issue arises."  N.D.N.Y. L.R. 7.1(a)(3).  "The Court shall deem admitted any properly supported facts set forth in the Statement of Material Facts that the opposing party does not specifically controvert."  *Id.*  Plaintiff has not filed a responsive Rule 7.1 Statement, but makes numerous factual assertions contradicting the facts set forth by Defendants in his various submissions.  In deference to Plaintiff's *pro se* status the Court has opted to review the entire summary judgment record in order to ascertain the undisputed material facts.  *See Holtz v. Rockefeller & Co.*, 258 F.3d 62, 73 (2d Cir.  2001) (noting court's "broad discretion to determine whether to overlook a party's failure to comply with local court rules").

On or about December 24, 2014, Plaintiff was given a misbehavior report by Defendant C.O. Hickey regarding an incident of December 23, 2014.  Dkt. No. 213-1, Declaration of John Moore ("Moore Decl."), Ex. 34, Transcript of Plaintiff's May 25, 2017 Deposition ("Pl.'s 5/25/17 Dep.") at pp. 11-13; Dkt. No. 213-3, Declaration of Defendant Dennis Hickey ("Hickey Decl.") at ¶¶ 4-7 & Ex. A; Dkt. No. 213-12, Declaration of Defendant Brian Chuttey ("Chuttey Decl.") at ¶ 9 & Ex. A at p. 20.[3]  The misbehavior report authored by Defendant Hickey charged Plaintiff with violating rules regarding violent conduct, assault on staff, interference, and failing to follow a direct order.  Hickey Decl., ¶¶ 4-7 & Ex. A.  The report involved allegations that Plaintiff was not following proper procedure and failed to follow directions from Hickey.  It also alleged that Plaintiff attempted to assault Hickey.  *Id.* at ¶ 5, Ex. A.  Plaintiff was then escorted to the Special Housing Unit ("SHU") by Defendant Connors, among others.   Dkt. No. 213-6, Declaration of Theodore Connors ("Connors Decl.") at ¶ 6.

Upon arrival at the SHU a series of events took place that resulted in Plaintiff being given a second misbehavior report, this one written by Corrections Officer Baney.  Pl.'s 5/25/17 Dep. at pp. 13-14, 23, 37-38; Chuttey Decl. at ¶ 12 & Ex. A at p. 21.  This misbehavior report charged Plaintiff with violent conduct, failing to follow a direct order, interference, and failure to comply with frisk procedures. Chuttey Decl. at ¶ 13 & Ex. A at p. 21.  The second report generally alleges that Plaintiff refused to comply with procedures

---

[3] Page references to the exhibits to the Chuttey Declaration are to those assigned by the Court's CM/ECF system.

for admission to SHU.  Chuttey Decl. at  ¶ 14.

Plaintiff was given a third misbehavior report on December 23, 2014, this one written

by C.O. Schramm.  It alleged that Plaintiff refused staff direction to provide a urine sample

on December 23, 2014.  Pl.'s 5/25/17 Dep. at pp. 14 - 17, 23, 37-38; Chuttey Decl. at ¶ 15

& Ex. at p. 22.

While Plaintiff disputes the accuracy of the allegations in these reports, he does not

challenge that the reports were issued and that he was involved in use of force incidents on

December 23, 2014.  Indeed, he contends that during the events surrounding the issuance of

the misbehavior report authored by Defendant Hickey, that Hickey, as well as Defendants

Abate, Thomas, Venditti, and Gilfus used excessive force in assaulting him.  Defendant

Chuttey was designated to act as the hearing officer for a combined hearing to address all

three misbehavior reports issued regarding events on December 23, 2014. Chuttey Decl. at

¶¶ 3-6.  Following a lengthy hearing, held over several days in January 2015, Plaintiff was

found guilty of all charges.  Chuttey Decl. at ¶¶ 39-42.  Plaintiff administratively appealed

the decision and while the guilty determinations were affirmed, the penalties were modified.

Pl.'s 5/25/17 Dep. at pp. 125-28.

While Plaintiff was being escorted to SHU following the December 24, 2014 incident

with Defendant Hickey, he told Defendant Connors he wanted medical treatment and claimed

to be having trouble breathing. Connors Decl. at ¶ 6.  Defendant Connors advised Plaintiff

that he would be seen by a nurse immediately upon arrival at SHU.  *Id.*  Plaintiff was, in fact,

seen by medical staff upon his arrival at SHU. *Id.*; Dkt. No. 213-7, Declaration of Defendant Jessica Dugan ("Dugan Decl."), ¶ 5, Ex. A.[4]  Plaintiff was examined by Defendant Dugan, a Registered Nurse, upon his arrival in SHU. *Id.*; Moore Decl., Ex. 33, Transcript of Plaintiff's October 24, 2016 Deposition Transcript ("Pl.'s 10/24/16 Dep.") at pp. 117-18. After examining Plaintiff, and making note of his injuries and physical complaints, Dugan referred Plaintiff to be seen by a doctor and he was examined by Dr. Cincotta within 10 minutes.  Pl.'s 10/24/16 Dep. at pp. 120 & 124; Dugan Decl. at ¶¶ 6 & 9 & Ex. B at p. 2.

Plaintiff's Amended Complaint alleges causes of action for excessive force, failure to protect, retaliation, due process violations, and deliberate indifference to his serious medical needs.

## II.  LEGAL STANDARD

Pursuant to Fed. R. Civ. P. 56(a), summary judgment is appropriate only where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  The moving party bears the burden to demonstrate through "pleadings, depositions, answers to interrogatories, and admissions on file, together with [ ] affidavits, if any," that there is no genuine issue of material fact. *F.D.I.C. v. Giammettei*, 34 F.3d 51, 54 (2d Cir. 1994) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).

To defeat a motion for summary judgment, the non-movant must set out specific facts showing that there is a genuine issue for trial, and cannot rest merely on allegations or denials

---

[4] Exhibits A and B to the Dugan Declaration are docketed as Docket Number 214.

of the facts submitted by the movant.  Fed. R. Civ. P. 56(c); *see also Scott v. Coughlin*, 344

F.3d 282, 287 (2d Cir. 2003) ("Conclusory allegations or denials are ordinarily not sufficient

to defeat a motion for summary judgment when the moving party has set out a documentary

case."); *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 525-26 (2d Cir. 1994).  To that

end, sworn statements are "more than mere conclusory allegations subject to disregard . . .

they are specific and detailed allegations of fact, made under penalty of perjury, and should

be treated as evidence in deciding a summary judgment motion" and the credibility of such

statements is better left to a trier of fact.  *Scott v. Coughlin*, 344 F.3d at 289 (citing *Flaherty*

*v. Coughlin*, 713 F.2d 10, 13 (2d Cir. 1983) and *Colon v. Coughlin*, 58 F.3d 865, 872 (2d Cir.

1995)).

　　When considering a motion for summary judgment, the court must resolve all

ambiguities and draw all reasonable inferences in favor of the non-movant.  *Nora Beverages,*

*Inc. v. Perrier Group of Am., Inc.*, 164 F.3d 736, 742 (2d Cir. 1998).  "[T]he trial court's task

at the summary judgment motion stage of the litigation is carefully limited to discerning

whether there are any genuine issues of material fact to be tried, not to deciding them.  Its

duty, in short, is confined at this point to issue-finding; it does not extend to

issue-resolution."  *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1224

(2d Cir. 1994).  Furthermore, where a party is proceeding pro se, the court must "read [his

or her] supporting papers liberally, and . . . interpret them to raise the strongest arguments

that they suggest."  *Burgos v. Hopkins*, 14 F.3d 787, 790 (2d Cir. 1994), *accord, Soto v.*

*Walker*, 44 F.3d 169, 173 (2d Cir. 1995).  Nonetheless, summary judgment is appropriate "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

## III.  DISCUSSION

Defendants seek summary judgment dismissing the entire Amended Complaint on the ground that Plaintiff failed to exhaust available administrative remedies as required by the Prison Litigation Reform Act ("PLRA").  Dkt. No. 217, Defs.' Am. Mem. of Law, pp. 3-7.  Defendants also seek summary judgment on the merits of each of Plaintiff's individual constitutional claims with the exception of the excessive force claim.  *Id.* at pp. 8-30.  Finally, Defendants seek summary judgment on the ground of qualified immunity.  *Id.* at pp. 31-32.  Defendants' arguments are considered in turn below.

### A. Failure to Exhaust Administrative Remedies

Defendants seek dismissal of the entire Amended Complaint based upon Plaintiff's failure to exhaust his available administrative remedies.  Defs.' Am. Mem. of Law at p. 7.  As an initial matter, the Court notes that one of Plaintiff's claims is a procedural due process claim regarding the conduct of a disciplinary hearing held by Defendant Chuttey.  *See* Am. Compl. at ¶¶ 12-16.  As to that claim Plaintiff "exhausts his administrative remedies by presenting his objections in the administrative appeals process, not by filing a separate grievance instead of or in addition to his ordinary appeal."  *Grubbs v. Serrell*, 2018 WL

1175232, at *2 (N.D.N.Y. Mar. 6, 2018) (quoting *Sweet v. Wende Corr. Facility*, 514 F. Supp. 2d 411, 413 (W.D.N.Y. 2007)); *see also Davis v. Barrett*, 576 F.3d 129, 131-32 (2d Cir. 2009).  The record clearly establishes that Plaintiff did file such an administrative appeal. Moore Decl., Ex. 32.  That claim, therefore, is properly exhausted.  Defendants' argument as to the exhaustion of the remaining claims is considered below.

The Prison Litigation Reform Act ("PLRA") provides:

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a).  Exhaustion under this statute is mandatory.  *Williams v. Priatno*, 829 F.3d 118, 123 (2d Cir. 2016).  "Exhaustion promotes efficiency for the agency and federal courts by allowing agencies an initial opportunity to resolve claims 'much more quickly and economically' and providing courts 'a useful record for subsequent judicial consideration.'" *Thomas v. Waugh*, 2018 WL 1508563, at *5 (N.D.N.Y. Mar. 27, 2018) (quoting *Woodford*, 548 U.S. at 89).  The failure to exhaust will be excused only if there was not truly an "available" means by which to exhaust the claim.  *Ross v. Blake*, 136 S. Ct. 1850, 1859 (2016).

The DOCCS has a well established "three-step process that requires an inmate to: (1) file a grievance with the IGRC; (2) appeal to the superintendent within four working days of receiving the IGRC's written response; and (3) appeal to the CORC in Albany, New York within four working days of receipt of the superintendent's written response."  *Abney v.*

*McGinnis*, 380 F.3d 663, 668 (2d Cir. 2004) (citing 7 N.Y.C.R.R. § 701.7) (internal citations omitted); *see also Hooks v. Howard*, 2010 WL 1235236, at *3 (N.D.N.Y. Mar. 30, 2010). "If a prisoner has failed to properly follow each of the applicable steps prior to commencing litigation, he has failed to exhaust his administrative remedies." *Rahman v. Connell*, 2015 WL 4740336, at *3 (N.D.N.Y. Aug. 10, 2015) (citing *Woodford*, 548 U.S. at 93); *see also Mitchell v. Senkowski*, 158 Fed. Appx. 346, 350 (2d Cir. 2005).

In support of their Motion, Defendants offer evidence of only two grievances filed which arguably address the claims at issue in this lawsuit and submit that neither is sufficient to satisfy the PLRA's exhaustion requirement. First is Grievance No. AUB-66523-15 filed January 6, 2015 at Auburn Correctional Facility. Dkt. No. 213-10, Declaration of Cheryl Parmiter at ¶ 7. This is the only grievance filed by Plaintiff at Auburn after the December 23rd incident. *Id.* The grievance is titled "Examination Protocol Not Followed After Injury." A review of that grievance makes clear that it relates only to Plaintiff's claims that he did not receive proper medical care. *Id.* at Ex. B at pp. 14-15. Nurse Dugan is the only Defendant named in the grievance and it makes no reference to a claimed excessive use of force, alleged retaliation, or any other claim asserted in this litigation. *Id.* Records offered by Defendants show that the grievance proceeded through the first two stages of the grievance process, but was not appealed to CORC. *Id.* at ¶¶ 8-9; Dkt. No. 213-11, Declaration of Rachael Sequin at ¶ 7.

In opposing the Motion, however, Plaintiff offers a document which purports to show

his appeal of this grievance.  Dkt. No. 220-1 at p. 4.  The appeal statement also mentions Officers Hickey, Venditti, and Thomas, but only in the context of contending that Nurse Dugan failed to provide proper medical care after an alleged assault by these officers.  *Id.* Even if this brief statement could be read as a grievance against these officers, rather than identifying the basis for which he needed medical assistance, those allegations "were not in the originating grievance" and thus are not sufficient to exhaust those claims.  *Robinson v. Rome*, 2013 WL 3328222, at *8 (N.D.N.Y. July 2, 2013); *see also Fox v. Labatte*, 2016 WL 8716662, at *4 (N.D.N.Y. Mar. 11, 2016), *report and recommendation adopted as modified*, 2016 WL 1266958 (N.D.N.Y. Mar. 31, 2016)("Plaintiff cannot circumvent the procedures set forth by the facility by submitting a backdoor appeal to CORC by raising the issue for the first time").

As a result, the Auburn grievance, at best, could be sufficient only to exhaust Plaintiff's medical indifference claim.[5]  Defendants contend that, in any event, the grievance did not exhaust any of Plaintiff's remedies because it was not appealed to CORC.  Recall that Plaintiff alleges the grievance was appealed.  *See* Dkt. No. 220-1 at p. 4.  Under DOCCS regulations "CORC shall review each appeal, render a decision on the grievance, and transmit its decision to the facility . . . within 30 calendar days from the time the appeal was received." 7 N.Y.C.R.R. § 701.5.  Viewing the evidence in the light most favorable to

---

[5] In addition to Nurse Dugan, Sgt Connors is named as a Defendant as to this claim.  Though Defendant Connors is not specifically named in the grievance, a grievance need not identify each and every potential defendant in a grievance for it to sufficiently exhaust a claim.  *Jones v. Bock*, 549 U.S. 199, 219 (2007).

Plaintiff, namely that he did file such an appeal, the appeal to CORC is dated January 30, 2015.  Dkt. No. 220-1.  The original Complaint in this case was dated February 15, 2015 and it was filed February 19, 2015.  *See* Dkt. No. 1, Compl.  That means "Plaintiff signed and filed his complaint in this action less than thirty days after he submitted his appeal to CORC. He thus did not give CORC an opportunity to respond to his appeal before he proceeded to federal court."  *Thompson v. Bellevue Hosp.*, 2011 WL 4369132, at *13 (N.D.N.Y. Aug. 29, 2011), *report and recommendation adopted as modified sub nom. Thompson v. Dep't of Corr. NYC*, 2011 WL 4369125 (N.D.N.Y. Sept. 19, 2011).  That constituted a failure to exhaust.  *Id.*; *Fox v. Labatte*, 2016 WL 8716662, at *3 (N.D.N.Y. Mar. 11, 2016), *report and recommendation adopted as modified*, No. 2016 WL 1266958 (N.D.N.Y. Mar. 31, 2016) (claims unexhausted when CORC grievance was filed January 26, 2015 and complaint postmarked February 6, 2015); *Klein v. Fischer*, 2015 WL 5174031, at *19 (N.D.N.Y. Sept. 2, 2015) (finding claims unexhausted when "Plaintiff[']s original Complaint . . . was filed . . . less than thirty days after the appeal to CORC").

Defendants also offer evidence of grievances filed in 2015 after Plaintiff had been transferred to Upstate Correctional Facility.  Dkt. No. 213-9, Declaration of Donna Wilcox at Ex. A.  Grievance UST-55624-15 again alleges that Plaintiff had been denied medical care allegedly needed as a result of the alleged December 2014 assault.  *Id.* at ¶ 7 & Ex. B.  The denial of medical care at issue in this grievance, however, concerned care at Upstate Correctional Facility, *id.*, and there are no claims in this case concerning Plaintiff's care at

Upstate.

The grievance does make reference to some of the events at issue here, however. It discusses the alleged use of force and certain aspects of Plaintiff's due process claim. That grievance was first denied by the Superintendent at Upstate and then appealed to CORC. The CORC determination specifically found that any claims regarding the events at Auburn were untimely. Wilcox Decl., ¶ 10 & Ex. B. at p. 35. An untimely grievance does not satisfy the exhaustion requirement. *Woodford v. Ngo,* 548 U.S. 81, 83-84 (2006); *Lee v. O'Harer*, 2014 WL 7343997, at *6 n.6 (N.D.N.Y. Dec. 23, 2014); *Conklin v. Bowen*, 2014 WL 4063294, at *3 (N.D.N.Y. Aug. 14, 2014). The Upstate Grievance is also insufficient to satisfy the PLRA's exhaustion requirement.

Accordingly, the Court recommends that Defendants' Motion for Summary Judgment based on the failure to exhaust be denied as to Plaintiff's due process claim against Defendant Chuttey but granted as to all other claims.

While the failure to exhaust is a sufficient ground for granting summary judgment, the Court will also address the additional substantive grounds raised by Defendants.[6]

## B. First Amendment Retaliation

Plaintiff claims that Defendants Graham, Hickey, Thomas, and Venditti retaliated against him in December 2014 by improperly using force, or permitting such force to be used, and interposing "fake charges" against Plaintiff. Am. Compl. at ¶¶ 2-10; Dkt. No. 220-

---

[6]The failure to exhaust is the only basis presented in this motion for dismissal of the excessive force claim against Defendants Abate, Thomas, Hickey, Venditti, and Gilfus.

2.  Plaintiff alleges the retaliation was in response to a grievance Plaintiff filed against Defendant Thomas on March 19, 2014.  Am. Compl. at ¶ 6.

"To prevail on a First Amendment retaliation claim, an inmate must establish '(1) that the speech or conduct at issue was protected, (2) that the defendant took adverse action against the plaintiff, and (3) that there was a causal connection between the protected conduct and the adverse action'."  *Holland v. Goord*, 758 F.3d 215, 225 (2d Cir. 2014) (quoting *Espinal v. Goord*, 558 F.3d 119, 128 (2d Cir.2009)).  The plaintiff must establish that "the protected conduct was a substantial or motivating factor" behind the retaliatory action.  *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir.1996).  The Second Circuit has warned that "courts must approach prisoner claims of retaliation with skepticism and particular care."  *Dawes v. Walker*, 239 F.3d 489, 491 (2d Cir. 2001) (citing *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir.1983)).  This is true because retaliation claims are "easily fabricated" and as a result "virtually any adverse action taken against a prisoner by a prison official - even those otherwise not rising to the level of a constitutional violation - can be characterized as a constitutionally proscribed retaliatory act."  *Dawes v. Walker*, 239 F.3d at 491.

Plaintiff claims that he was retaliated against because of a March 2014 grievance filed against Defendant Thomas.  Am. Compl. at ¶ 6.  The filing of a grievance is protected activity sufficient to establish the first element of a retaliation claim.  *Davis v. Goord*, 320 F.3d 346, 352-53 (2d Cir. 2003).  A retaliation plaintiff must then establish a causal connection between a protected activity and an adverse action.  *Holland v. Goord*, 758 F.3d at 22.  But to survive dismissal Plaintiff "must advance non-conclusory allegations."  *Garcia*

*v. S.U.N.Y. Health Scis. Ctr. of Brooklyn,* 280 F.3d 98, 106 (2d Cir. 2001).

### *1. Adverse Action*

Hickey and Venditti presume, without conceding, that Plaintiff may be able to establish adverse action. Defs.' Am. Mem. of Law at pp. 9-10. While Defendant Thomas contends that Plaintiff cannot establish an adverse action with regard to him, Plaintiff does allege that Thomas assaulted him on December 23, 2014 in retaliation for the grievance filing. Am. Compl. at ¶ 5. An assault clearly qualifies as an adverse action in this context. *Flemming v. King,* 2016 WL 5219995, at *5 (N.D.N.Y. June 20, 2016), *report and recommendation adopted,* 2016 WL 5173282 (N.D.N.Y. Sept. 21, 2016). Thomas' denial that the assault occurred, *see generally* Dkt. No. 213-5, Declaration of Charles Thomas ("Thomas Decl."), only raises a factual question that cannot be resolved at this stage of the litigation.

Defendant Graham, however, is entitled to summary judgment on Plaintiff's retaliation claim because Plaintiff offers no evidence of an adverse action on Graham's part. Plaintiff claims that Graham "[p]ut Plaintiff in harms way" by permitting Thomas to harm Plaintiff. Dkt. No. 220-2. At his deposition Plaintiff testified that Graham, as Superintendent of Auburn, had Thomas moved to cover Plaintiff's program assignment. Pl.'s 10/24/16 Dep. at p. 51. He could not articulate anything, other than Graham's overall position of authority, to support his contention that Graham had actually done so. *Id.* at pp. 51-52. He conceded that he had no personal knowledge that Graham had any role in Thomas' assignment to Plaintiff's program, *id.* at p. 52, and that he never personally spoke

with Graham about this. *Id.* at p. 54. Graham specifically denies taking any action, including having any role in Thomas' work assignment, to retaliate against Plaintiff. Declaration of Harold Graham ("Graham Decl.") at ¶¶ 10-11. Given this record, Plaintiff's conclusory allegation that Graham took adverse action against him cannot withstand summary judgment. *Woods v. Miller*, 2017 WL 4181383, at *6 (N.D.N.Y. Aug. 1, 2017), *report and recommendation adopted*, 2017 WL 4155357 (N.D.N.Y. Sept. 18, 2017) ("Plaintiff's vague allegations are insufficient to establish that Defendant[] took adverse action against him.")

### 2. Casual Connection

In a summary judgment motion, the non-movant must proffer "some tangible proof" of a casual connection between the protected activity and the adverse action and the plaintiff "may not rely on conclusory assertions of retaliatory motive." *Washington v. Cty. of Rockland*, 373 F.3d 310, 321 (2d Cir. 2004). "Courts assess four factors to determine whether the necessary causal link exists: '(i) the temporal proximity between the protected activity and the alleged retaliatory act; (ii) the inmate's prior good disciplinary record; (iii) vindication at a hearing on the matter; and (iv) statements by the defendant concerning his motivation.'" *Pierrot v. Hahn*, 2017 WL 4221117, at *8 (N.D.N.Y. July 28, 2017), *report and recommendation adopted*, 2017 WL 4221072 (N.D.N.Y. Sept. 21, 2017) (quoting *Lunney v. Brureton*, 2007 WL 1544629, at *21 (S.D.N.Y. May 29, 2007)).

Regarding temporal proximity:

[t]here is no bright line to define the outer limits beyond which a temporal relationship is too attenuated to establish a causal relationship, so courts judge the permissible inferences that can be drawn from temporal proximity in the

*-15-*

context of particular cases. However, courts have found that six and eight month gaps between the protected conduct and adverse action were sufficient, while in other circumstances three months was considered too long.

*DeLeon v. Wright*, 2012 WL 3264932, at *7 (N.D.N.Y. July 5, 2012), *report and recommendation adopted*, 2012 WL 3264929 (N.D.N.Y. Aug. 9, 2012) (quoting *Burton v. Lynch*, 664 F.Supp.2d 349, 367 (S.D.N.Y.2009)). Here, over nine months passed between the protected activity and the alleged retaliation. Such a long gap is very attenuated and highly suggestive of a lack of causal connection. *White v. Eastman Kodak*, 2009 WL 1514659, at *10 (W.D.N.Y. May 29, 2009) ("The Court determines that in the absence of any other evidence, [nine months] is simply too long a period of time to show temporal proximity."); *Uddin v. City of New York*, 427 F. Supp. 2d 414, 434 (S.D.N.Y. 2006) ("actions that took place more than nine months after the last alleged protected activity . . . are too remote to establish a causal connection.")

The record contains no evidence regarding Plaintiff's past disciplinary record, but the disciplinary proceedings concerning the events at issue resulted in Plaintiff being found guilty of charges including assault on staff, interference with employee, and multiple charges of both violent conduct and refusing direct orders. Chuttey Decl. at ¶ 39. As discussed *infra* at Point III(D) these determinations are supported by ample evidence in the record. These charges arose from the alleged assault incident claimed by Plaintiff and the guilty determinations regarding those charges are strong evidence against the claim of retaliation. *Williams v. Muller*, 2001 WL 936297, at *4 (S.D.N.Y. Aug. 17, 2001) ("This outcome strongly suggests the existence of proper reasons for [defendants'] actions, and raises an

inference of non-retaliation.").

Finally, considering the evidence of Defendants' motivation for their actions also demonstrates that the retaliation claim cannot survive summary judgment. Hickey and Venditti both expressly deny knowing about the March grievance against Thomas. Hickey Decl. at ¶ 8; Dkt. No. 213-4, Declaration of Alec Venditti at ¶ 6. Thomas avers that he never told either about that grievance. Thomas Decl. at ¶ 6. A lack of knowledge regarding the allegedly protected activity defeats a retaliation claim. *Blake v. Elfeldt*, 2012 WL 5830694, at *8 (N.D.N.Y. Oct. 11, 2012), *report and recommendation adopted*, 2012 WL 5830718 (N.D.N.Y. Nov. 16, 2012). In response, Plaintiff offers nothing beyond purely conclusory assertions to suggest that Defendants acted in response to the grievance. He specifically denies having any independent knowledge of Hickey's motivation to retaliate against him. Pl.'s 10/24/16 Dep. at pp. 93-94. As to Venditti, Plaintiff alleges in conclusory fashion that he was part of the "beat up squad" and that he was motivated by friendship with Thomas and Hickey to assault Plaintiff. *Id.* at pp. 94-95. "Naked allegations of retaliatory motives cannot create a factual dispute capable of defeating summary judgment." *Banez v. New York Foundling Hosp.*, 2001 WL 1035142, at *6 (S.D.N.Y. Sept. 7, 2001) (citing *Meiri v. Dacon*, 759 F.2d 989, 998 (2d Cir. 1985)).

For these additional reasons, it is recommended that Plaintiff's retaliation claim be dismissed.[7]

---

[7] Defendants Hickey and Venditti offer as an additional argument in support of summary judgment that they would have taken the same action even in the absence of any protected activity and so judgment is appropriate under
(continued...)

### C. Eighth Amendment Failure to Protect

Defendants next seek summary judgment as to Plaintiff's failure to protect claim against Defendant Graham.  "In order to succeed on a claim of failure to protect, the inmate 'must establish both that a substantial risk to his safety actually existed and that the offending defendant knew of and consciously disregarded that risk.'"  *Clark v. Gardner*, 256 F. Supp. 3d 154, 167 (N.D.N.Y. 2017).  To establish this claim, then, Plaintiff must show both that he was incarcerated under conditions posing a substantial risk of serious harm and that Defendant Graham was deliberately indifferent to that risk.  *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

Plaintiff does not appear to oppose this portion of the Motion.  *See* Dkt. Nos. 220-3; 241.  Nor does the record support such a claim.  Generally stated, Plaintiff alleges that Graham "knew of Conflict [sic]" between Plaintiff and Defendant Thomas.  Am. Compl. at ¶ 1.  This knowledge allegedly resulted from grievances filed by Plaintiff against Thomas in March 2014.  *Id.* at ¶ 6.  Plaintiff alleges that despite this knowledge, Graham nonetheless allowed Plaintiff to be in the proximity of Thomas in December 2014 when Thomas allegedly assaulted him.  *Id.* at ¶ 1.  The record establishes that other than the March grievance, Graham had no information regarding any conflict between Plaintiff and Thomas.  Graham Decl. at ¶ 10.  Graham also indicates that he had no role in Thomas' work

---

[7](...continued)
*Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle*, 429 U.S. 274 (1977).  Defs.' Am. Mem. of Law at pp. 14-15.  Given that one part of the action allegedly taken was the excessive use of force, which is plainly unlawful, Defendants' argument in this regard is not an independent basis for relief.

assignment in December 2014.  *Id.*  Plaintiff offers nothing but conclusory allegations to suggest that, given this evidence, Graham had any basis on which to believe that there was a threat of harm to Plaintiff from Defendant Thomas based on a grievance filed nine months earlier.  Such allegations are insufficient to survive summary judgment.  *Burroughs v. Petrone*, 138 F. Supp. 3d 182, 215 (N.D.N.Y. 2015).

For these reasons Defendant Graham is entitled to summary judgment.

## D. Fourteenth Amendment Due Process

Plaintiff was issued three inmate misbehavior reports on December 23, 2014.  Chuttey Decl., Ex. A at pp. 20-22.  Defendant Chuttey was designated as the hearing officer for the hearings regarding these misbehavior reports.  Chuttey Decl., ¶ 4.  Plaintiff claims that Chuttey violated his due process rights during the course of the hearing.  Am. Compl. at ¶¶ 12-18.  For the reasons which follow, Chuttey is entitled to summary judgment on these claims.

In the context of an inmate disciplinary proceeding, due process requires that the inmate be: (1) afforded advance written notice of the charges against him; (2) provided a written statement supporting the disposition and reasons for the disciplinary action taken; (3) permitted to call witnesses and present documentary evidence; (4) entitled to a fair and impartial hearing officer; and (5) found guilty only if the disposition is supported by at least "some evidence."  *Wolff v. McDonnell*, 418 U.S. 539, 563–64 (1974); *Kalwasinski v. Morse*, 201 F.3d 103, 108 (2d Cir. 1999) (citing cases).  Additionally, because Plaintiff was confined to a special housing unit prior to his disciplinary hearing, he was also entitled to an employee

assistant. *Clark v. Gardner*, 256 F. Supp. 3d 154, 170 (N.D.N.Y. 2017).  The record here establishes that all of these due process requirements were complied with in Plaintiff's case.

As to some of these requirements, there is no dispute.  Plaintiff testified at his deposition that he received all three of the misbehavior reports prior to the hearing held by Defendant Chuttey.  Pl.'s 5/25/17 Dep. at pp. 13-16.  The record also clearly establishes that Plaintiff received the assistance from two employee assistants prior to the commencement of the disciplinary hearing.  *Id.* at pp. 20-21; Chuttey Decl., Ex. A at pp. 25-26.  It is also clear that Plaintiff received a detailed written disposition of the charges and of the reasons for the disciplinary action taken following the hearing.  Pl.'s 5/25/17 Dep. at pp. 121-23; Chuttey Decl., Ex. A at p. 17.

There was also sufficient evidence to support the determination reached by Chuttey.  "The Supreme Court has clarified that judicial review of the written findings required by due process is limited to determining whether the disposition is supported by some evidence."  *McDonald v. Zerniak*, 2016 WL 6581289, at *5 (N.D.N.Y. Nov. 4, 2016) (internal quotation omitted).  This requires the Court to determine "whether there was reliable evidence of the inmate's guilt."  *Luna v. Pico*, 356 F.3d 481, 488 (2d Cir. 2004).  Here, Officers Baney and Hickey testified consistent with the allegations set forth in their misbehavior reports.  *See* Chuttey Decl., Ex. A at pp. 10-11 & Ex. B. at pp. 83-84 & 110-15.  The "some evidence" standard is satisfied when hearing testimony was consistent with the written misbehavior report.  *See Hinton v. Prack*, 2014 WL 4627120, at *15 (N.D.N.Y. Sept. 11, 2014) (citation omitted) ("some evidence" standard satisfied where the misbehavior report was made by the

officer personally involved in the incident and was based upon his first hand observation and detailed account of the incident); *Kotler v. Daby*, 2013 WL 1294282, at *10 (N.D.N.Y. Mar. 28, 2013) (same); *Creech v. Schoellkoph*, 688 F. Supp. 2d 205, 214 (W.D.N.Y. 2010) (same). Beyond just the testimony of these two officers, however, Corrections Officer Sgt. Young and Corrections Officer Fagan, among others, provided testimony regarding the report issued by Officer Baney.   Chuttey Decl., Ex. B at pp. 98-104; *see also* Ex. B, *generally*.   Again, among others, Officers Venditti and Thomas testified regarding the Hickey report.   *Id.* at pp. 143-48 & 161-64.   Defendant Chuttey also had numerous documents and a videotape beyond the misbehavior report available to him which supported the ultimate guilty determination. *See generally* Chuttey Decl., Ex. B. As such, this is a case where "the testimony of multiple witnesses, the misbehavior report[s]" and other evidence clearly provided some evidence of Plaintiff's guilt.   *Weaver v. Gutwein*, 2014 WL 906150, at *5 (N.D.N.Y. Mar. 7, 2014).

There was also some evidence to support the guilty determination regarding the misbehavior report issued by Officer Schramm.   Defendant Chuttey indicated that he relied upon the misbehavior report itself and the request for urinalysis form indicating Plaintiff's refusal as evidence of Plaintiff's guilt.   Chuttey Decl., Ex. B at p. 181; *see also id.*, Ex. A at pp. 22 & 38.   The fact that Officer Schramm did not testify regarding the report he issued does not alter the analysis.   "The [s]ome evidence standard has been held to be satisfied in cases where the hearing official relies almost entirely on an incident report written by a non-testifying officer." *Reeves v. Perdue*, 2014 WL 2177405, at *4 (N.D.N.Y. May 23, 2014) (citing cases); *Kotler v. Daby*, 2013 WL 1294282, at *13 ("'some evidence' standard has

been found to be satisfied when the hearing official relies almost solely on the incident report without interviewing the officer(s) who wrote the misbehavior report."). It is significant here that Plaintiff did not request Officer Schramm as a witness. *See* Chuttey Decl. at ¶¶ 22 & 30 & Ex. B.

Plaintiff claims that his right to call witnesses and present documentary evidence was denied. Plaintiff requested to have fourteen individuals testify at the hearing - thirteen employees of DOCCS and one inmate. Chuttey Decl. at ¶¶ 30, 34 & 37. All but one of these witnesses did, in fact, testify at the hearing. *Id*.; *see also* Chuttey Decl., Ex. B. The only witness denied to Plaintiff was Dr. Cincotta. Defendant Chuttey denied Dr. Cincotta as a witness on the ground that he had not been present at any of the incidents underlying the misbehavior reports at issue. Chuttey Decl. at ¶ 34. During the hearing, Plaintiff indicated that he wished to have the doctor testify about the injuries he received, but admitted that he was not present for the events at issue in the hearing. Chuttey Decl., Ex. B. at pp. 62-63. A hearing officer's refusal to have medical personnel, who were not present at the underlying event, testify regarding the extent of an inmate's injuries does not offend due process. *Cole v. New York State Dep't of Corr. & Cmty. Supervision*, 2016 WL 5394752, at *22 (N.D.N.Y. Aug. 25, 2016), *report and recommendation adopted*, 2016 WL 5374125 (N.D.N.Y. Sept. 26, 2016); see also *Rossi v. Goord*, 2006 WL 2811505, at *14 (N.D.N.Y. Sept. 28, 2006) (denial of testimony of individuals who did not witness relevant events not a violation of due process) (citing *Kalwasinski v. Morse*, 201 F.3d at 109). The failure to have Dr. Cincotta testify, therefore, was not a violation of due process.

Plaintiff also objects that he was denied access to an Unusual Incident Report and a videotape. While inmates have a general right to access relevant documentary evidence "this right 'does not entail an obligation on the part of prison officials to retrieve every document that an inmate requests even when documents are relevant and obtainable.'" *Rossi v. Stevens*, 2008 WL 4452383, at *10 (S.D.N.Y. Sept. 30, 2008) (quoting *Amaker v. Coombe*, 2002 WL 523388, at *10 (S.D.N.Y. Mar. 29, 2002)). Here, the record establishes that Plaintiff received much of the available evidence, but that he wished for more.

Defendant Chuttey made available a copy of the Unusual Incident report that was generated regarding events taking place during Plaintiff's admission to SHU. Plaintiff stated he did not want that report, but one involving his initial interactions with Defendant Hickey. Plaintiff was advised that there was a use of force report regarding that incident, but not an Unusual Incident Report. Plaintiff and the hearing officer then engaged in significant back and forth regarding the differences between the two reports and what exactly Plaintiff was requesting access to. Chuttey Decl., Ex. B at pp. 82-89. Plaintiff was given the opportunity to review documentation and chose not to; that does not constitute a denial of due process.

Plaintiff also objects that he was not provided access to relevant videotape evidence during his hearing. Specifically, he alleges that portions of the event at issue were recorded on a hand-held video recorder and that that video was not presented at his hearing. Dkt. No. 220-4. Twice during the disciplinary hearing, Defendant Chuttey played what he advised Plaintiff was the only available video evidence for Plaintiff. Chuttey Decl. at ¶ 32; Pl.'s 5/25/17 Dep. at pp. 74-75. The Court notes that the existence of another video was heavily

litigated during discovery in this case.  Defendants were directed by the Court to conduct a supplemental search for the purported additional video, Dkt. No. 224, and that search was unavailing.  Dkt. No. 234.  Plaintiff's conclusory allegations to the contrary do not raise factual questions sufficient to defeat summary judgment.  *Harris v. Aidala*, 271 Fed. Appx. 34, 36 (2d Cir. 2008) (finding allegations that DOCCS officials had additional videotape tape that was not made available to Plaintiff insufficient to defeat summary judgment).  The record here establishes that the additional video evidence Plaintiff sought was not available and "where the requested documents are found to be nonexistent, the inmate suffers no constitutional deprivation."  *Mohamed v. Phelix*, 2017 WL 4326660, at *12 (N.D.N.Y. June 13, 2017), *report and recommendation adopted*, 2017 WL 4326520 (N.D.N.Y. Sept. 28, 2017) (citing *Mays v. Mahoney*, 1994 WL 48831, at * 7 (S.D.N.Y. Feb. 14, 1994)).

Plaintiff also objects to his exclusion from his hearing at its conclusion.  Given Plaintiff's disruptive conduct Chuttey removed Plaintiff from the hearing room.  Chuttey Decl. at ¶ 38.  At that time all testimony had concluded and Plaintiff was not present only for Chuttey reading of his disposition into the record.  *Id.*; *see also* Chuttey Decl., Ex. B. at pp. 179-82.  Plaintiff received a written copy of the disposition read into the record.  Pl.'s 5/25/17 Dep. at pp. 121-23.  Even were excluding Plaintiff error, it is clearly harmless and no basis for relief.  *Pilgrim v. Luther*, 571 F.3d 201, 206 (2d Cir. 2009); *Eleby v. Selsky*, 682 F. Supp. 2d 289, 292 (W.D.N.Y. 2010).

Finally, Plaintiff cannot establish that Chuttey was biased or lacked the necessary impartiality.  The due process protection of an impartial hearing officer "requires only that

the hearing officer's decision not be arbitrary. *Gibson v. Rosati*, 2017 WL 1534891, at *11 (N.D.N.Y. Mar. 10, 2017), *report and recommendation adopted*, 2017 WL 1512371 (N.D.N.Y. Apr. 27, 2017) (citing *Allen v. Cuomo*, 100 F.3d 253, 259 (2d Cir. 1996)).  A disciplinary determination is not arbitrary when, as outlined above, it is supported by "some evidence." *Superintendent v. Hill*, 472 U.S. 445, 455 (1985).  Apart from his exclusion from the hearing just discussed, the only other specific claim of bias is the entirely conclusory allegation that Chuttey came to Plaintiff's cell prior to the commencement of the hearing and told Plaintiff he would be found guilty and that "he had a hand that [stretches]  from Clinton to Attica C.F."  Am. Compl. at ¶ 12. "Claims of hearing officer bias are common in § 1983 cases by inmate plaintiffs, and where they are based on purely conclusory allegations, they are routinely dismissed." *Brown v. Dubois*, 2017 WL 9511165, at *3 (N.D.N.Y. Feb. 28, 2017), *report and recommendation adopted*, 2017 WL 1102746 (N.D.N.Y. Mar. 24, 2017); *see also Gillard v. Rovelli*, 2014 WL 4060025, at *13 (N.D.N.Y. Aug. 14, 2014); *Britt v. Fawcett*, 2009 WL 890631, at *6 (N.D.N.Y. Mar. 31, 2009).

Accordingly, it is recommended that summary judgment be granted to Defendant Chuttey.

### E. Eighth Amendment Medical Indifference

Plaintiff alleges that Sgt. Connors and Nurse Dugan were deliberately indifferent to his medical needs after he was allegedly assaulted on December 23, 2014.  Am. Compl. at ¶¶ 7 & 11.  Defendant seeks summary judgment as to this claim on the ground that Plaintiff was provided appropriate medical treatment following this incident.  Defs.' Am. Mem. of

Law at pp. 24-28.

To state an Eighth Amendment claim for denial of adequate medical care, a prisoner must demonstrate that prison officials acted with "deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). "[T]he plaintiff must allege conduct that is 'repugnant to the conscience of mankind' or 'incompatible with the evolving standards of decency that mark the progress of a maturing society.'" *Ross v. Kelly*, 784 F. Supp. 35, 44 (W.D.N.Y.), *aff'd*, 970 F.2d 896 (2d Cir. 1992) (*quoting Estelle v. Gamble*, 429 U.S. at 102, 105-06). To state a claim for denial of medical care, a prisoner must demonstrate (1) a serious medical condition and (2) deliberate indifference. *Farmer v. Brennan*, 511 U.S. 825, 834-35 (1994); *Hathaway v. Coughlin* ("*Hathaway I*"), 37 F.3d 63, 66 (2d Cir. 1994).

The first prong is an objective standard and considers whether the medical condition is "sufficiently serious." *Farmer* v. Brennan, 511 U.S. at 834 (quoting *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)). Here, a court must make two inquiries. First, the court must determine "whether the prisoner was actually deprived of adequate medical care." *Salahuddin v. Goord*, 467 F.3d 263, 279 (2d Cir. 2006). Medical care is adequate where the care provided is a "reasonable" response to the inmate's medical condition. *Id*. The second inquiry is "whether the inadequacy in medical care is sufficiently serious." *Id*. at 280. In cases where there is a failure to provide any treatment, the court examines whether the inmate's medical condition is sufficiently serious. *Smith v. Carpenter*, 316 F.3d 178, 185-86 (2d Cir. 2003). The Second Circuit has stated that a medical need is serious if it presents "a condition of urgency that may result in degeneration or extreme pain." *Chance v. Armstrong*,

143 F.3d 698, 702 (2d Cir. 1998) (internal quotation marks and citation omitted).  Among the relevant factors to consider are "[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain."  *Id*. (*quoting McGuckin v. Smith*, 974 F.2d 1050, 1059-60 (9th Cir. 1992)).

The second prong of the Eighth Amendment analysis is a subjective standard requiring a plaintiff to demonstrate that the defendant acted with the requisite culpable mental state similar to that of criminal recklessness.  *Wilson v. Seiter*, 501 U.S. at 301-03; *Hathaway I*, 37 F.3d at 66.  A plaintiff must demonstrate that the defendant acted with reckless disregard to a known substantial risk of harm.  *Farmer v. Brennan*, 511 U.S. at 836.  This requires "something more than mere negligence . . . [but] something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result."  *Id*. at 835; *see also Weyant v. Okst*, 101 F.3d 845, 856 (2d Cir. 1996) (*citing Farmer v. Brennan*, 511 U.S. at 835).  Further, a showing of medical malpractice is insufficient to support an Eighth Amendment claim unless "the malpractice involves culpable recklessness, i.e., an act or a failure to act by the prison doctor that evinces 'a conscious disregard of a substantial risk of serious harm.'"  *Chance v. Armstrong*, 143 F.3d at 702 (*quoting Hathaway v. Coughlin* ("*Hathaway II*"), 99 F.3d 550, 553 (2d Cir. 1996)); *see also Hernandez v. Keane*, 341 F.3d 137, 144 (2d Cir. 2003) (citations omitted).

For purposes of this Motion the Court presumes that there are at least questions of fact

regarding the objective prong of this analysis.  Medical records show that only relatively minor injuries were observed at the time Plaintiff was first seen in the Special Housing Unit. Dugan Aff., Exs. A & B.  Plaintiff, however, alleges much more serious injuries.  *See*, *e.g.*, Am. Compl. at ¶ 5 (alleging dislocated shoulder) & 11 (alleging lacerations and breathing difficulties).  This dispute should not and need not be resolved on this Motion because it is clear that with respect to the subjective prong summary judgment is appropriate for Defendants.

### 1. Sgt. Connors

Plaintiff's medical claim against Sgt. Connors alleges that he was indifferent to Plaintiff's needs by taking Plaintiff directly to the Special Housing Unit rather than the medical unit on December 23, 2014.  Pl.'s 10/24/16 Dep. at pp. 96-98.  Sgt. Connors arrived after a use of force incident involving Plaintiff and several other officers.  Connors Decl. at ¶ 6.  Connors, along with others, then escorted Plaintiff to the SHU.  *Id.*

In order for a prison official to be liable for medical indifference "the official must 'know of and disregard an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference.'"  *Hill v. Curcione*, 657 F.3d 116, 122 (2d Cir. 2011) (internal alternations omitted) (quoting *Farmer v. Brennan*, 511 U.S. at 837).  The record establishes that while Plaintiff was being escorted Sgt. Connors observed "no bleeding or other visible injuries."  Connors Decl. at ¶ 6.  Plaintiff did request medical treatment during the escort.  *Id.*; Pl.'s 10/24/16 Dep. at p. 98.  Connors knew that Plaintiff would be

seen by medical staff upon arriving at the Special Housing Unit. Connors Decl. at ¶ 6. Given these facts, Connors felt there was no need to transport Plaintiff to a medical unit first rather than SHU. *Id.*

As Connors had indicated he would be, Plaintiff was seen by several different medical professionals within minutes of arriving at the Special Housing Unit. He was examined, had x-rays performed, and was given pain medication. Dkt. No. 214. Rather than demonstrating an indifference to Plaintiff's health, this evidence, which is not refuted by Plaintiff, *see* Pl.'s 10/24/16 Dep. at pp. 113-24, shows that Connors was aware of Plaintiff's request for medical attention, considered his medical state, and acted in a manner consistent with addressing those concerns. *Butler v. Smith*, 2008 WL 4186338, at *6 (N.D.N.Y. Sept. 10, 2008) (dismissing medical indifference claim against Sergeant who was not a medical professional and had no reason to believe actions taken regarding plaintiff were inadequate). As such, Plaintiff cannot establish the subjective prong of his Eighth Amendment claim as to Defendant Connors.

### 2. Nurse Dugan

Plaintiff alleges that Nurse Dugan was deliberately indifferent because she failed to give Plaintiff a meaningful assessment upon his admission to SHU. Am. Compl. at ¶ 11; Dkt. No. 210-2 at p. 2; Dkt. No. 241 at p. 5. There is no question that Dugan examined Plaintiff when he arrived in SHU on December 23rd. Pl.'s 10/24/16 Dep. at pp. 118-19; Dugan Aff. at ¶ 5. Plaintiff also concedes that she conducted an assessment of him on that date. Pl.'s 10/24/16 Dep. at p. 118. At that time Plaintiff complained to Dugan about pain

in his left shoulder and throat. *Id.* Dugan documented both of those complaints in the medical records. Dkt. No. 214 at p. 5. She also documented left arm pain and a problem moving the left arm and shoulder. *Id.* Dugan further documented that there were no obvious deformities on the arm or shoulder and that Plaintiff had no obvious injury or redness in his throat. *Id.* Dugan then referred Plaintiff to be seen by a doctor. Dugan Decl. at ¶ 5. Within ten minutes of seeing Nurse Dugan, Plaintiff was seen in SHU by Dr. Cincotta. *Id.* at ¶ 6; Pl.'s 10/24/16 Dep. at pp. 120 & 124. The doctor examined Plaintiff and ordered x-rays of his shoulder which came back normal. Pl.'s 10/24/16 Dep. at p. 122; Dkt. No. 214 at p. 6.

The fact that Plaintiff may feel that he "did not get the level of medical attention he deserved" is insufficient to establish an Eighth Amendment claim. *Jenkins v. Trachtman*, 2017 WL 7163935, at *4 (N.D.N.Y. Dec. 22, 2017), *report and recommendation adopted*, *Jenkins v. Trachtman*, 2018 WL 626303 (N.D.N.Y. Jan. 30, 2018). Plaintiff's claims that the assessment provided by Nurse Dugan was incomplete or insufficient essentially amount to a disagreement over treatment which cannot be a basis for an Eighth Amendment claim. *Solar v. Lennox*, 2012 WL 3929936, at *19 (N.D.N.Y. July 16, 2012), *report and recommendation adopted*, 2012 WL 3929958 (N.D.N.Y. Sept. 10, 2012) (citing *Chance v. Armstrong*, 143 F.3d at 703); *Irby v. Frisnia*, 119 F. Supp. 2d 130, 132 (N.D.N.Y. 2000) (no deliberate indifference where, at most, defendant might be liable for negligence "in failing to initially diagnose [plaintiff's] injury").

Plaintiff's position that the presence of a bruising five days after the incident supports his claim that Dugan was indifferent to his needs is also without merit. There is no evidence

to suggest that Plaintiff complained of such an injury when admitted to SHU.  *See* Pl.'s

10/24/16 Dep. at pp. 113-124 (discussing claim against Dugan).  "At worse then, [Dugan]

failed to identify an injury that Plaintiff himself had not felt the effects of at the time of

[Dugan's] assessment." *Harris v. Morton*, 2008 WL 596891, at *4 (N.D.N.Y. Feb. 29, 2008)

(finding no deliberate indifference when injury was discovered after initial assessment).

Defendant Dugan's conduct, examining and documenting an inmate's complaints after

a use of force incident and referring him for treatment is far from indifferent to Plaintiff's

needs.  *Cole v. New York State Dep't of Corr. & Cmty. Supervision*, 2016 WL 5394752, at

*15 (N.D.N.Y. Aug. 25, 2016), *report and recommendation adopted*, 2016 WL 5374125

(N.D.N.Y. Sept. 26, 2016).

Accordingly, Defendants are entitled to summary judgment on Plaintiff's medical

indifference claims.

### F. Supervisory Claims

Plaintiff's claims against Annucci and Koenigsmann allege that they were deliberately

indifferent to issues he raised through letters written to them.  The basis of the deliberate

indifference appears to be that those letters were then referred to other people who in turn

responded to Plaintiff.  *See, e.g,* Am. Compl. at ¶ 20; Dkt. No. 220-6.  Defendants Annucci

and Koenigsmann seek summary  judgment on the ground that they were not personally

involved in any constitutional violation.  *See* Defs.' Am. Mem. of Law, pp. 28-30.

"[P]ersonal involvement of defendants in alleged constitutional deprivations is a

prerequisite to an award of damages under § 1983." *Wright v. Smith*, 21 F.3d 496, 501 (2d

Cir. 1994) (quoting *Moffitt v. Town of Brookfield*, 950 F.2d 880, 885 (2d Cir. 1991)). A supervisory official "may not be held liable for damages merely because he held a high position of authority." *Black v. Coughlin*, 76 F.3d 72, 74 (2d Cir. 1996). Moreover, "the doctrine of *respondeat superior* cannot be applied to section 1983 actions to satisfy the prerequisite of personal involvement." *Kinch v. Artuz*, 1997 WL 576038, at *2 (S.D.N.Y. Sept. 15, 1997) (citing *Colon v. Coughlin*, 58 F.3d 865, 874 (2d Cir. 1995) & *Wright v. Smith*, 21 F.3d at 501) (further citations omitted). "[M]ere 'linkage in the prison chain of command' is insufficient to implicate a state commissioner of corrections or a prison superintendent in a § 1983 claim." *Richardson v. Goord*, 347 F.3d 431, 435 (2d Cir. 2003) (quoting *Ayers v. Coughlin*, 780 F.2d 205, 210 (2d Cir. 1985)); *see also Wright v. Smith*, 21 F.3d at 501 (defendant may not be held liable simply because he holds a high position of authority).

The Second Circuit has held that the personal involvement of a supervisory official may be established if:

> (1) the defendant participated directly in the alleged constitutional violation, (2) the defendant, after being informed of the violation through a report or appeal, failed to remedy the wrong, (3) the defendant created a policy or custom under which unconstitutional practices occurred, or allowed the continuance of such a policy or custom, (4) the defendant was grossly negligent in supervising subordinates who committed the wrongful acts, or (5) the defendant exhibited deliberate indifference to the rights of inmates by failing to act on information indicating that unconstitutional acts were occurring.

*Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995) (citations omitted).[8]

The record establishes that Plaintiff did write numerous letters to both Annucci and Koenigsmann and that those letters were generally forwarded to other DOCCS personnel with responses then being sent to Plaintiff. Dkt. No. 220-6 at pp. 3-11; Pl.'s 10/24/16 at pp. 146-48 & 162. The law is clear, however, that such actions are insufficient to establish personal involvement. "It is within the purview of a superior officer to delegate responsibility to others." *Scott v. Koenigsmann*, 2016 WL 1057051, at \*7 (N.D.N.Y. Mar. 14, 2016). "Prison supervisors are entitled to refer letters of complaint to subordinates, and rely on those subordinates to conduct an appropriate investigation and response, without rendering the supervisors personally involved in the constitutional violations alleged in the letters of complaint." *Vega v. Artus*, 610 F.Supp.2d 185, 199 n. 13 (N.D.N.Y. 2009); *see also Sealey v. Giltner*, 116 F.3d 47, 51 (2d Cir. 1997) (a supervisor's referral of a prisoner's letter of complaint to a subordinate for review, and a later response to the prisoner to advise him of the subordinates decision did not demonstrate the requisite personal involvement on the part of the supervisory prison official); *Josey v. Rock*, 2013 WL 1500435, \*11 (N.D.N.Y.

---

[8] The Second Circuit has yet to address the impact of *Ashcroft v. Iqbal*, 556 U.S. 662 (2009) upon the categories of supervisory liability under *Colon v. Coughlin*, 58 F.3d 865 (2d Cir. 1995). *See Grullon v. City of New Haven*, 720 F.3d 133 (2d Cir. 2013) (noting that the Court's decision in *Iqbal* "may have heightened the requirements for showing a supervisor's personal involvement," but declining to resolve the issue). Lower courts have struggled with this issue, specifically whether *Iqbal* effectively calls into question certain prongs of the *Colon* five-part test for supervisory liability. *See, e.g.*, *Sash v. United States*, 674 F. Supp. 2d 531, 543 (S.D.N.Y. 2009). While some courts have taken the position that only the first and third of the five *Colon* categories remain viable and can support a finding of supervisory liability, *see, e.g.*, *Bellamy v. Mount Vernon Hosp.*, 2009 WL1835939, at \*6 (S.D.N.Y. June 26, 2009), *aff'd*, 387 Fed. Appx. 55 (2d Cir. 2010), others disagree and conclude that whether any of the five categories apply in any particular cases depends upon the particular violations alleged and the supervisor's participatory role. *See, e.g.*, *D'Olimpio v. Crisafi*, 718 F. Supp. 2d 340, 347 (S.D.N.Y. 2010). Nevertheless, this Court, until instructed to the contrary, continues to apply the entirety of the five factor *Colon* test.

2013), *report and recommendation adopted*, 2013 WL 1501029 (N.D.N.Y. 2013) ("A supervisor's referral of a complaint to a subordinate for investigation does not constitute personal involvement"); *Walker v. Fischer*, 2011 WL 4369116, at *6 (N.D.N.Y. July 25, 2011), *report and recommendation adopted*, 2011 WL 4369096 (N.D.N.Y. Sept. 19, 2011), *aff'd*, 523 Fed. Appx. 43 (2d Cir. 2013) ("The 'mere receipt of letters from an inmate by a [supervisory official] regarding a medical claim is insufficient to constitute personal liability.'")

None of the other *Colon* factors are implicated here.  There is no allegation that either of these supervisory Defendants were directly involved in any of the incidents at issue here, that a policy or custom of their creation was at issue, or that either of these high-ranking officials had a role in supervising any of the other Defendants in a manner that could impose liability upon them.   Accordingly, Plaintiff's claims of indifference against Annucci and Koenigsmann should be dismissed for lack of personal involvement.

## V.  CONCLUSION

For the reasons stated herein, it is hereby

**RECOMMENDED**, that Defendants' Motion for Summary Judgment (Dkt. No. 213) be **GRANTED**[9] and this case be **DISMISSED**; and it is further

**ORDERED**, that the Clerk of the Court serve a copy of this Report-Recommendation and Order upon the parties to this action.

---

[9] Because the Court recommends that summary judgment be granted based on the failure to exhaust and those merits arguments raised by Defendants, it does not reach the alternative argument regarding Defendants' entitlement to qualified immunity.

Pursuant to 28 U.S.C. § 636(b)(1), the parties have fourteen (14) days[10] within which to file written objections to the foregoing report.  Such objections shall be filed with the Clerk of the Court.  **FAILURE TO OBJECT TO THIS REPORT WITHIN FOURTEEN (14) DAYS WILL PRECLUDE APPELLATE REVIEW.**  *Roldan v. Racette*, 984 F.2d 85, 89 (2d Cir. 1993) (citing *Small v. Sec'y of Health and Human Servs.*, 892 F.2d 15 (2d Cir. 1989)); *see also* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72 & 6(a).

Date:   August 10, 2018
        Albany, New York

Daniel J. Stewart
U.S. Magistrate Judge

---

[10] If you are proceeding *pro se* and are served with this Report-Recommendation and Order by mail, three additional days will be added to the fourteen-day period, meaning that you have seventeen days from the date the Report-Recommendation and Order was mailed to you to serve and file objections. FED. R. CIV. P. 6(d).  If the last day of that prescribed period falls on a Saturday, Sunday, or legal holiday, then the deadline is extended until the end of the next day that is not a Saturday, Sunday, or legal holiday.  FED. R. CIV. P. 6(a)(1)(C).